UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEBRA L. THOMAS,

    Plaintiff,

v.    Case No: 8:17-cv-541-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **ORDER**

Plaintiff, Debra L. Thomas, seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## **BACKGROUND**

### A.    Procedural Background

Plaintiff filed an application for a period of disability on July 25, 2013. (Tr. 229, 235.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 151, 154, 159, 164.) Plaintiff then requested an administrative hearing. (Tr. 171.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 30–95.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 13–24.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–4.) Plaintiff then timely filed a

complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

      **B.**      **Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1953, claimed disability beginning on October 7, 2013. (Tr. 229, 263.) Plaintiff has a high school education and an Associate's Degree in computer integrated manufacturing technology. (Tr. 268.) Plaintiff's past relevant work experience included work as a building illuminating engineer, auto engineer, computer-aided design technician, and supervisor of drafting and circuit design. (Tr. 22, 269.) Plaintiff alleged disability due to migraines, chronic back and cervical pain, osteoporosis, a history of left foot trauma, depression, anxiety, mood swings, crying spells, acid reflux, chronic hip pain, high blood pressure, asthmatic conditions, and allergies. (Tr. 267.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since October 7, 2013, the alleged onset date. (Tr. 15.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: hypertension, headaches, and degenerative disc disease of the lumbar spine. (*Id*.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform medium work except Plaintiff "would be expected to be off-task 5 percent of the time or 3 minutes per hour." (Tr. 19.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably

could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible. (Tr. 20.)

Considering Plaintiff's noted impairments, the ALJ determined that Plaintiff could perform her past relevant work. (Tr. 22.) Accordingly, based on Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff not disabled. (Tr. 23.)

**APPLICABLE STANDARDS**

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five

of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

# ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ's findings in the RFC assessment were not supported by substantial evidence; (2) the ALJ failed to properly consider the opinion of consulting physician Dr. Van Ingen; and (3) the ALJ failed to properly consider the opinions of advanced registered nurse practitioner ("ARNP") Patricia Thomas and Dr. Corzo. For the reasons that follow, none of these contentions warrant reversal.

## A. The ALJ's RFC Assessment

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The RFC is defined as the most a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), (3), 416.945(a)(1), (3). Therefore, the ALJ's RFC assessment need not be identical to a particular assessment of record or incorporate precise limitations set forth by a physician. *See* 20 C.F.R. § 416.945(a)(3) (stating that all of the record evidence is considered in the RFC assessment). Further, while the ALJ should consider medical opinions regarding a claimant's ability to work in forming the RFC, the medical opinions are distinct from the RFC assessment. *Id.* §§ 404.1527, 404.1545, 416.913(a), 416.927, 416.945.[1] Specifically, a claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

---

[1] For claims filed before March 27, 2017, including Plaintiff's claim, the rules in 20 C.F.R. §§ 404.1527, 416.927 apply.

### 1. *Plaintiff's Mental Limitations*

Plaintiff first argues that the ALJ erred in her assessment of Plaintiff's mental limitations in the RFC determination. (Dkt. 20 at 8.) Specifically, Plaintiff contends the ALJ failed to properly consider Plaintiff's bipolar disorder, depression, and anxiety. (Dkt. 20 at 9.) Plaintiff claims this issue is determinative because of the high skill level required for her past relevant work. (*Id.*) Plaintiff states that the record shows she has had "waxing and waning symptoms of bipolar disorder, depression and anxiety." (*Id.*)

In her RFC assessment, the ALJ concluded Plaintiff could perform medium work with the limitation that Plaintiff be able to be off-task five percent of the time or three minutes per hour. (Tr. 19.) Plaintiff argues that the ALJ erred because records from Plaintiff's treatment with ARNP Thomas and Dr. Corzo support a finding that Plaintiff's symptoms worsened with "everyday stress" and her medications were increased or changed. (Dkt. 20 at 10–11.) Plaintiff also argues that the ALJ would not have found that Plaintiff can return to her past relevant work if the ALJ had properly considered the opinions of ARNP Thomas, Dr. Corzo, and Dr. Van Ingen. (*Id.*) Further, Plaintiff asserts that the ALJ erred in relying on Plaintiff's performance of daily activities, such as housework, light cooking, and light grocery shopping, because these activities are not dispositive evidence of one's ability to perform sedentary work. (Dkt. 20 at 12.)

In response, the Commissioner argues that substantial evidence supports the ALJ's finding regarding her mental limitations. The ALJ considered Plaintiff's difficulties in remembering, completing tasks, concentrating, understanding, getting along with others, following instructions, and mood swings. (Tr. 20.) As noted by the ALJ, Plaintiff's treatment with ARNP Thomas generally included mental status examinations showing unremarkable findings, including that Plaintiff's appearance, general attitude and behavior, anxiety, perception, cognitive function, and

dominant character structure were within normal limits. (Tr. 17, 406, 408, 414–18, 454–59.) On October 8, 2013, ARNP Thomas described Plaintiff's depression as "ok." (Tr. 407.) Further, ARNP Thomas often noted that Plaintiff's medications worked well to control her symptoms and, in December 2014, noted that Plaintiff was "ready for a new job – actively seeking." (Tr. 408, 416–18, 456–57.)

The ALJ's RFC assessment is also supported by the findings of consultative physician Dr. Daniel Van Ingen. On October 7, 2013, Dr. Van Ingen found Plaintiff's thought processes were coherent and goal directed with no evidence of delusions, hallucinations, or disordered thinking, her attention and concentration skills were intact, her memory was fair, her intellectual functioning was average, and her insight and judgment were fair to good. (Tr. 17, 393–95.) Dr. Van Ingen further opined that Plaintiff had no evidence of limitation in her ability to understand and follow simple instructions and directions, perform simple and complex tasks independently, maintain attention and concentration for familiar, complex tasks, and learn new tasks. (*Id*.) Dr. Van Ingen also opined that Plaintiff had no limitation in her ability to follow a routine and schedule, make appropriate decisions, and relate adequately with others. (*Id*.) Additionally, state agency consulting physicians Dr. B. Lee Hudson and Dr. Richard Willens opined that Plaintiff's affective disorders were non-severe, imposing no restriction of daily activities or social functioning, mild difficulties with maintaining concentration, persistence or pace, and no repeated episodes of decompensation of extended duration. (Tr. 17, 100–01, 137–38.) Plaintiff's daily activities further supported the ALJ's RFC finding as the record reflects that Plaintiff completed an eight-week course in less than two weeks, worked part-time driving for automobile auctions, and asserted that she has little difficulty following written or spoken instructions and can handle changes in routine. (Tr. 16, 306, 458–61, 469.) Therefore, the ALJ's findings regarding Plaintiff's mental RFC are

supported by substantial evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (affirming the ALJ's RFC determination as supported by substantial evidence despite claimant's citing other record evidence to challenge the ALJ's RFC assessment).

Additionally, to the extent that Plaintiff points to other evidence which would undermine the ALJ's mental RFC determination, her contentions misinterpret the narrowly circumscribed nature of the court's appellate review, which precludes us from "re-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner]…even if the evidence preponderates against" the decision. *Id*. (quoting *Bloodsworth,* 703 F.2d at 1239). This court may not reweigh the evidence and decide facts anew and must defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

Plaintiff also makes the conclusory statements that the ALJ erred in finding Plaintiff's mental limitations non-severe. (Dkt. 20 at 9, 10.) However, Plaintiff fails to make any factual or legal argument supporting her assertion. As such, to the extent Plaintiff is attempting to challenge the ALJ's determination at step two of the sequential evaluation process, Plaintiff's statement is insufficient to raise this issue for appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("[A]n appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it.").

2. *Plaintiff's Hypertension, Headaches, and Degenerative Joint Disease*

Plaintiff also contends that the ALJ erred in assessing her physical RFC, including her hypertension, headaches, and degenerative joint disease ("DJD"). (Dkt. 20 at 13.) Plaintiff asserts that the "ALJ's RFC assessment that Plaintiff, a 60 year old woman could perform the full range of medium work is simply unsupported by medical evidence." (*Id*.) Plaintiff points to records indicating that she complained of hypertension and headaches to her primary care physician Dr. George Dunkelberger and ARNP Thomas. (Tr. 436, 439, 471.) In her decision, the ALJ noted that the record demonstrates Plaintiff's history of abnormal blood pressure readings. (Tr. 20.) However, the ALJ also noted that in July 2013, Dr. Dunkelberger indicated that Plaintiff's hypertension was stable when treated with medication. (Tr. 20, 360.) In June 2014, Dr. Dunkelberger further noted that Plaintiff's blood pressure readings "have been low." (Tr. 427.) Additionally, the ALJ concluded Plaintiff's headaches were not as limiting as Plaintiff claimed, noting Dr. Dunkelberger's July 2013 report that Plaintiff's migraines were "mild' and "improving" and indications that her headaches only became severe when she stopped taking her medication. (Tr. 21, 360, 436.) Thus, substantial evidence supports the ALJ's findings.

With regard to Plaintiff's DJD, Plaintiff argues that the ALJ minimized her DJD by stating that a March 2015 MRI of her lumbar spine showed only "generalized disc bulging at L5-S1." (Dkt. 20 at 14.) Despite Plaintiff's argument, the MRI record indicates that Plaintiff had a "generalized bulging disc with bilateral foraminal narrowing," "minimal disc bulge at L3-4," and "posterior fusion of L4-5 with hardware." (Tr. 451.) It is unclear how the ALJ's characterization of Plaintiff's disc bulging at L5-S1 as "generalized" contradicts the MRI impressions or how the other impressions from the MRI have any effect on Plaintiff's RFC. The ALJ also concluded Plaintiff's allegations of disabling pain were inconsistent with her reported daily activities,

including preparing meals, performing household chores, driving, and shopping. (Tr. 21, 394, 399.) In addition, in October 2013, Plaintiff appeared to be in no acute distress, demonstrated a normal gait and full range of motion in her back, shoulders, arms, hips, knees, and ankles, and had full strength in her extremities. (Tr. 400.)

Further, Plaintiff bears the burden of showing that she has a severe impairment or combination of impairments that may qualify as a disability. *Hutchinson v. Astrue*, 408 F. App'x. 324, 326 (11th Cir. 2011) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). Proof of the mere existence of an impairment does not prove the extent to which the impairment may limit Plaintiff's ability to work. *Hutchinson*, 408 F. App'x. at 326. Here, Plaintiff points to no medical evidence indicating that Plaintiff's headaches, hypertension, or DJD affected her ability to work. Plaintiff argues inferentially that her physical impairments "significantly limit Plaintiff's physical abilities, and as a result interfere with Plaintiff's ability to perform basic work activities." (Dkt. 15 at 13.) This sort of extrapolation is insufficient to warrant a reversal of the ALJ's RFC determination. *Moore*, 405 F.3d at 1213.

### B. Dr. Van Ingen

Plaintiff next argues that the ALJ erred in rejecting the opinion of consulting physician Dr. Van Ingen. (Dkt. 20 at 16.) As described above, Dr. Van Ingen opined in part that Plaintiff had no evidence of limitation in her ability to understand and follow simple instructions and directions, perform simple and complex tasks independently, maintain attention and concentration for familiar, complex tasks, and learn new tasks. (Tr. 17, 393–95.) The ALJ afforded the majority of

Dr. Van Ingen's opinion partial weight due to its consistency with the record. (Tr. 17.) However, the ALJ afforded Dr. Van Ingen's opinion that Plaintiff appeared moderately limited in her ability to cope with daily stress little weight because Dr. Van Ingen failed to define the term "moderate." (Tr. 17, 395.)

Medical opinions, which include physician statements regarding the nature and severity of the claimant's impairments, may support the ALJ's determination of whether a claimant suffers from a severe impairment. 20 C.F.R. § 404.1527(a)(2). When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). In determining the weight to afford a medical opinion, the ALJ considers the following factors: the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion. *Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015).

Here, Dr. Van Ingen is a consultative examiner and, as such, his opinion is not entitled to the deference normally given treating sources. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (finding that opinions of consultative examining physicians "are not entitled to deference because as one-time examiners they were not treating physicians"); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160–161 (11th Cir. 2004) ("The ALJ correctly found that, because [a consultative examiner] examined [claimant] on only one occasion, her opinion was not entitled to great weight."); 20 C.F.R. § 404.1527(c)(2) (explaining that treating sources are given greater weight because their opinions "may bring a unique perspective to the medical evidence that cannot

be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Dr. Van Ingen was not Plaintiff's treating physician, rather he examined Plaintiff to provide opinions as to Plaintiff's social security application. Thus, his opinion is not entitled to significant weight.

Further, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). Here, the ALJ's assignment of little weight to Dr. Van Ingen's opinion regarding Plaintiff's ability to handle stress is supported by substantial evidence. Specifically, and more thoroughly addressed above, the ALJ relied upon Plaintiff's treatment with ARNP Thomas, the opinions of state agency consulting physicians Dr. Hudson and Dr. Willens, Plaintiff's daily activities, and Dr. Van Ingen's psychological evaluation of Plaintiff in assessing Plaintiff's mental RFC. *See supra* Section (A)(1). Thus, the evidence supports a contrary finding to Dr. Van Ingen's opinion regarding Plaintiff's ability to cope with stress, and good cause existed for the ALJ to afford that portion of his opinion little weight. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).

Plaintiff further argues that the ALJ erred in failing to contact Dr. Van Ingen regarding his meaning of the word "moderate." (Dkt. 20 at 17.) However, under the regulations, the ALJ "may recontact [a] medical source" if there is insufficient evidence to determine whether a claimant is disabled. 20 C.F.R. § 404.1520b(b). Here, the ALJ's findings were based on ample record evidence. Thus, the ALJ was not required to contact Dr. Van Ingen. *See Robinson v. Astrue*, 365 F. App'x 993, 998–99 (11th Cir. 2010) (per curium) (finding that the ALJ had no duty to contact treating and consulting doctors where there was sufficient information in the record to determine the plaintiff's impairments and ability to work). Further, "the claimant bears the burden of proving

that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

  C. **ARNP Patricia Thomas and Dr. Corzo**

Plaintiff last contends that the ALJ erred in weighing the opinions of ARNP Thomas and in failing to weigh the opinion of psychiatrist Dr. Hector Corzo. (Dkt. 20 at 14.) Plaintiff argues that the ALJ was required to weigh Dr. Corzo's opinion because he reviewed and signed the mental RFC form prepared by ARNP Thomas. (*Id.*) However, Plaintiff also states that she "only saw Dr. Corzo's ARNP Patricia Thomas" (Dkt. 20 at 4) and testified at the hearing that she has "never seen" Dr. Corzo. (Tr. 58.) Further, all of the records from Plaintiff's treatment at Hector R. Corzo M.D., P.A. and Associates indicate that Plaintiff was only seen by ARNP Thomas. (Tr. 406–18, 454–75.) Thus, there is no evidence that Dr. Corzo treated or examined Plaintiff other than his signature at the bottom of a Mental Residual Functional Capacity Questionnaire ("RFC Questionnaire") completed by ARNP Thomas. (Tr. 446–50.)

To the extent Dr. Corzo did examine Plaintiff during the completion of the RFC Questionnaire, the ALJ is not required to assign controlling weight to the opinion of a treating physician who examined a claimant only once. *Heppell-Libsansky v. Comm'r of Soc. Sec.*, 170 F. App'x 693, 698 (11th Cir. 2006) (ruling that the ALJ did not err by failing to accord a physician's opinion controlling weight where physician treated claimant only twice after the alleged onset date, as the physician did not have a longstanding relationship with claimant). Here, the ALJ was not required to defer to Dr. Corzo's opinion, as it was an opinion rendered by a physician who examined Plaintiff only once during a RFC Questionnaire. *Id.*; *Beegle v. Comm'r of Soc. Sec.*, 482 F. App'x 483, 489 (11th Cir. 2012) (finding that the ALJ was not required to defer to a physician's opinion because the physician only examined the claimant on a single occasion and did not treat

him); *McSwain*, 814 F.2d at 619 (finding that physicians' opinions were "not entitled to deference because as one-time examiners they were not treating physicians").

Further, "[t]o the extent that the administrative law judge erred by failing to state with particularity the weight assigned to [a physician's] medical opinions, the error is harmless" if it does not "affect the administrative law judge's ultimate determination." *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (finding that the ALJ's decision was supported by substantial evidence and, therefore, the ALJ's failure to explicitly state the weight afforded to treating physicians' testimony was harmless error); *Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 975–76 (11th Cir. 2014) (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion and concluding that "when the ALJ's error did not affect its ultimate findings, the error is harmless, and the ALJ's decision will stand"); *Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008) (finding that the ALJ's failure to state the weight given to a physician's opinions was harmless error because the opinions did not otherwise contradict the ALJ's findings); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (finding harmless error for the ALJ's failure to explicitly state what weight he afforded to a number of physicians' medical opinions when the opinions did not directly contradict the ALJ's findings). Here, any alleged error by the ALJ for failing to weigh the opinion of Dr. Corzo is harmless as the ALJ clearly weighed the opinions in the RFC Questionnaire, affording it little weight. (Tr. 17.)

Plaintiff also argues that the ALJ erred in rejecting the opinions of ARNP Thomas as "other source" evidence. (Dkt. 20 at 14–15.) However, because Plaintiff's claim was filed before March 27, 2017, ARNP Thomas is not an acceptable medical source. 20 C.F.R. §§ 404.1502(a)(7). As such, her opinion is not considered a "medical opinion" and cannot establish the existence of an impairment, although her opinion may be used to show the severity of an impairment and how it

affects Plaintiff's ability to work. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (citing *Crawford*, 363 F.3d at 1160).

In evaluating the opinions of ARNP Thomas, the ALJ noted her findings, including her opinion that Plaintiff was not able to meet competitive standards in a range of workplace activities. (Tr. 17.) The ALJ then assigned the opinion little weight, noting that the opinion is inconsistent with the medical evidence of record, including ARNP Thomas' own treatment notes of Plaintiff described in Section (A)(1). (*Id*.) The ALJ further reasoned that the RFC Questionnaire was inconsistent with the mental status examination by Dr. Van Ingen. (*Id*.) Thus, the ALJ considered the opinions of ARNP Thomas but found good cause to afford the opinions little weight, after considering the evidence as a whole, because the severity of the limitations in her opinions was inconsistent with the objective medical evidence. (*Id*.) As discussed above, the ALJ's reasons are supported by substantial evidence. Therefore, the ALJ did not err in affording little weight to the opinions of ARNP Thomas. *See Sryock*, 764 F.2d at 835.

Last, Plaintiff argues that the ALJ failed to specify which treatment notes by ARNP Thomas were inconsistent with the RFC Questionnaire. (Dkt. 20 at 15.) However, there is no requirement that the ALJ specifically refer to every piece of evidence from Plaintiff's medical records in her decision. *Dyer*, 395 F.3d at 1211. Rather, the district court must review the ALJ's decision and determine whether the ALJ considered the plaintiff's medical condition as a whole and also determine whether the ALJ's conclusion, as a whole, was supported by substantial evidence in the record. *Id.* (quoting *Foote v. Charter*, 67 F.3d 1553, 1561 (11th Cir. 1995)). The

ALJ's decision is supported by substantial evidence. Therefore, Plaintiff's last contention does not warrant reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on February 20, 2018.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record